UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**CAROLYN RICHARDSON,**

**Plaintiff,**                    **CIVIL ACTION NO. 04-CV-71902-DT**

**vs.**

**COMMISSIONER OF**                    **DISTRICT JUDGE DENISE PAGE HOOD**

**SOCIAL SECURITY,**                    **MAGISTRATE JUDGE MONA K. MAJZOUB**

**Defendant.**

_____/

## REPORT AND RECOMMENDATION

**RECOMMENDATION:** This Court recommends that Defendant's Motion For Summary

Judgment be GRANTED, and Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

This is an action for judicial review of the final decision of the Commissioner of Social

Security that the Plaintiff was not entitled to Disability Insurance Benefits under the Social Security

Act, 42 U.S.C. §§ 416(i), 423.  The issue for review is whether the Commissioner's decision that

the Plaintiff is not disabled was properly supported.

Plaintiff Carolyn Richardson filed an application for Disability Insurance Benefits (DIB) on

September 10, 2002.  (Tr. 39).  She alleged she had been disabled since November 17, 2001.  *Id.*

On January 2, 2003, Plaintiff's claims were denied.  (Tr. 27).  Plaintiff requested a hearing before

an Administrative Law Judge on February 12, 2003.  (Tr. 31).  Plaintiff received a hearing before

ALJ John Ransom on August 6, 2003.  (Tr. 154).  The ALJ issued a written opinion finding that

Plaintiff was not disabled on December 17, 2003.  (Tr. 14-23).  Plaintiff filed a request for review

of the ALJ's opinion before the Appeals Council.  (Tr. 9).  The Appeals Council denied review on

March 25, 2004. (Tr. 5). The ALJ's written opinion now stands as Defendant's final decision on Plaintiff's claim. *See* 20 C.F.R. §§ 404.955, 404.981.

## MEDICAL HISTORY

March 3, 1959. (Tr. 155). Plaintiff began to complain of wrist and arm pain in early 2001. EMG examinations of Plaintiff's wrists and elbows performed in March and April 2001 showed that Plaintiff had mild carpal tunnel syndrome and possible bilateral ulnar neuritis. (Tr. 101). A May 8, 2001 clinical examination of Plaintiff by Timothy Hayes, D.O. showed some clinical problems with Plaintiff's wrists and elbows. (Tr. 101). However, Plaintiff did not show atrophy or weakness in her arms. (Tr. 102). Dr. Hayes concluded that Plaintiff had overuse syndrome mediated by her ulnar nerve. *Id.* He recommended conservative treatments, with possible ulnar nerve decompression if Plaintiff's condition progressed. *Id.*

Plaintiff was examined by Edward B. Trachtman, D.O. on June 18, 2001. (Tr. 94). Dr. Trachtman noted Plaintiff had hypertonicity in the upper trapezius and cervical paraspinal muscles. (Tr. 96). Plaintiff demonstrated full functional strength and range of motion in both arms and wrists. (Tr. 97). However, Plaintiff's wrists, elbows, and shoulders were painful at various positions within their respective ranges of motion. *Id.* Dr. Trachtman concluded that Plaintiff's carpal tunnel syndrome and ulnar neuropathy were not severe. (Tr. 98). He opined that Plaintiff had bilateral tenosynovitis in the wrists and elbows, cervical and upper trapexius myositis, and possible mild thoracic outlet syndrome and ulnar neuropathy. *Id.* Dr. Trachtman recommended that Plaintiff not perform repetitive work with her arms. (Tr. 97).

John P. Blocksom, M.D. examined Plaintiff on August 21, 2001. (Tr. 99). While Plaintiff continued to complain of intermittent pain and demonstrated tenderness in her wrists and elbows,

Dr. Blocksom noted that Plaintiff had good strength and that her general condition had improved with therapy. *Id.* EMG studies of the nerves in Plaintiff's wrists and elbows performed on September 25, 2001 showed Plaintiff had bilateral ulnar neuropathies at the elbow, and mild carpal tunnel syndrome in her left wrist. (Tr. 130).

Gavin I. Awerbuch, M.D. examined Plaintiff on November 27, 2001. (Tr. 127). Dr. Awerbuch found that Plaintiff had a good range of cervical motion with some neck pain, positive Tinel's sign in both elbows and the left wrist. *Id.* Dr. Awerbuch concluded that Plaintiff suffered from overuse syndrome, bilateral carpal tunnel syndrome, bilateral ulnar neuropathies, left C7-8 radiculopathy, bilateral shoulder impingement, and bilateral thoracic outlet syndrome. (Tr. 128).

Richard M. Singer, M.D. reviewed Plaintiff's condition on March 7, 2002. (Tr. 136). Dr. Singer examined Plaintiff and reviewed a recent arthrogram of her shoulders. *Id.* The arthrogram showed that Plaintiff had a perforation in the triangular cartilage complex and scapholunate. *Id.* To treat Plaintiff's thoracic outlet syndrome, Dr. Singer recommended that Plaintiff lose weight, strengthen her shoulder muscles, and possibly undergo shoulder surgery. (Tr. 136-137).

Jerome V. Ciullo, M.D. examined Plaintiff's shoulders on April 25, 2002. (Tr. 115). He noted that Plaintiff's shoulder area had significant muscle spasms, translational wobble, and a restricted range of motion. (Tr. 115). He opined that Plaintiff's shoulder condition would not improve in the long term unless she were to undergo an effective surgical tightening procedure. *Id.* Dr. Ciullo noted that a tightening procedure on Plaintiff would be effective only if she weighed less than one hundred and sixty pounds. *Id.*

Peter Miller, M.D. took several medical images of Plaintiff's shoulders on May 16, 2002. (Tr. 113). After reviewing these images and clinically examining Plaintiff's shoulders, Dr. Miller

-3-

concluded that Plaintiff's right shoulder had a Hill-Sachs lesion of the humeral head and a Bankart fracture of the glenoid rim, associated with anterior glenohumeral instability or dislocation.  (Tr. 113).  He concluded that Plaintiff's left shoulder had osteoarthritic degenerative changes.  (Tr. 114).

Dr. Ciullo examined Plaintiff again on July 11, 2002.  (Tr. 106).  He noted that Plaintiff had gained 5 pounds, and now weighed 180 pounds.  *Id.*  Plaintiff complained that her shoulder pain had become more severe.  *Id.*  Dr. Ciullo noted that Plaintiff would not be a good candidate for shoulder surgery until she weighed less than 160 pounds.  Id.  On December 23, 2002, Milliam Thomas, M.D. performed a physical residual functional capacity assessment of Plaintiff.  (Tr. 138-142).  Dr. Thomas concluded that Plaintiff could perform light work with limits on the use of her arms, and no climbing, crawling, or exposure to cold or wetness.  *Id.*

On April 25, 2003 Kevin Chung, M.D. performed a diagnostic arthroscopy of Plaintiff's left wrist.  (Tr. 147).  Dr. Chung found synovitis on the radial and ulnar borders of the wrist joint, and a peripheral tear of the triangular fibrocartilage complex that destabilized the radioulnar joint.  *Id.*  Plaintiff also had a complete tear of the scapholunate ligament.  *Id.*  Dr. Chung removed some of the synovitis effecting Plaintiff's wrist, and recommended a subsequent surgery to stabilize Plaintiff's wrist and reattach her torn ligaments.  *Id.*  It appears that Plaintiff underwent surgery on her left wrist in August, 2003.  (Pl.'s Brief App. A).

## HEARING TESTIMONY

Plaintiff testified before ALJ John Ransom on August 6, 2003.  (Tr. 152).  Plaintiff testified that she had difficulty sleeping or driving because of pain in her elbows, wrists, and shoulders.  (Tr. 157-59).  Plaintiff testified that she could wash dishes by hand and clean around the house.  (Tr. 162).  Plaintiff also testified that she was able to shower and dress herself, prepare her own meals, and walk

-4-

without restriction.  (Tr. 164).  In addition, Plaintiff testified that her medications caused her to take up to four naps a day, each lasting up to an hour.  (Tr. 169).

The ALJ also took testimony from Pauline McEachin, a vocational expert.  (Tr. 170).  She was asked to provide testimony about the availability of work for a hypothetical person of Plaintiff's age, work history and educational history who was subject to certain physical limitations.  (Tr. 171).  Specifically, she was asked to assume the hypothetical person performing sedentary work that involved no repetitive pushing, pulling, or reaching, no above-shoulder work, no forceful gripping or twisting of the hands or wrists, and no work around unprotected heights, or moving machinery.  (Tr. 171).  The vocational expert testified that such a person could perform several thousand jobs in the economy.  *Id.*  In response to questioning by Plaintiff's counsel, the vocational expert testified that there would be no work available in the economy for a person who had to take regular naps during the work day.  (Tr. 172).

## STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions.  Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  It is not the function of this court to  try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## DISCUSSION AND ANALYSIS

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

    (1)    she was not presently engaged in substantial gainful employment; and

    (2)    she suffered from a severe impairment; and

    (3)    the impairment met or was medically equal to a "listed impairment;" or

    (4)    she did not have the residual functional capacity (RFC) to perform her relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R.. § 416.920(a)-(e). If Plaintiff's impairments prevented her from doing her past work, the Commissioner would, at step five, consider her RFC, age, education and past work experience to determine if she could perform other work. If she cannot, she would be deemed disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the

form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

The ALJ concluded that Plaintiff's impairments were not medically equal to a listed severe impairment and that Plaintiff could not perform her past work. The ALJ denied Plaintiff's claim because he determined that there were other jobs available in the economy for a person of Plaintiff's age, educational level, and functional capacity.

Plaintiff argues that the ALJ improperly found Plaintiff's complaints of disabling pain to be only partially credible. Plaintiff claims that the ALJ dismissed Plaintiff's complaints without adequate discussion of the evidence on the record. To determine whether there is objective medical evidence underlying a complaint of disabling pain, the ALJ must determine whether objective medical evidence either confirms the severity of the pain or establishes an objective medical condition of such severity that it can reasonably be expected to produce disabling pain. *Duncan v. Sec'y of Health and Hum. Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). In making his credibility determination, the ALJ cannot make a single conclusory statement, or merely recite the factors described in the Social Security Regulations for evaluating. *See* SSR 96-7p. Rather, the ALJ's decision must contain specific reasons for the credibility finding, supported by evidence on the record. *Id.*

The ALJ's decision complies with SSR 96-7p and is supported by substantial evidence on the record. In his opinion, the ALJ specifically considered the relevant objective medical evidence and Plaintiff's testimony in detail. The ALJ incorporated a number of physical limitations relating to Plaintiff's wrist, elbow, and shoulder problems into Plaintiff's RFC. He concluded that Plaintiff could not repetitively push, pull, or reach with either arm, forcefully grip or twist her wrists, perform production work of any kind, or do any work that involved reaching above shoulder level. (Tr. 18). The ALJ noted that Plaintiff's treating physicians had consistently found that while Plaintiff's grip

-7-

strength and range of motion were somewhat restricted, she was able to use her arms subject to the restrictions just mentioned. (Tr. 17). The ALJ also discussed Plaintiff's own testimony that she was able to wash dishes by hand, prepare food, and carry groceries into the house. (Tr. 18).

Plaintiff also argues that the ALJ improperly discounted her testimony that her medications caused her to be exceptionally drowsy during the day. The ALJ concluded that Plaintiff lacked the physical capacity to do work near moving machinery or unprotected heights. However, Plaintiff testified that this drowsiness forces her to take several naps during the day, each lasting up to an hour, a physical limitation the ALJ did not include in Plaintiff's RFC. As the ALJ noted in his written opinion, while Plaintiff is on several medications that can cause some drowsiness, Plaintiff's medical records do not contain *any* complaints of excessive daytime sleepiness or drowsiness. Substantial evidence on the record therefore supports the ALJ's RFC determination.

## **RECOMMENDATION**

The Commisioner's decision is supported by substantial evidence. Plaintiff's Motion for Summary Judgment should be DENIED, and. Defendant's Motion for Summary Judgment should be GRANTED.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit*

*Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: 06/14/05                          s/ Mona K. Majzoub
                                         MONA K. MAJZOUB
                                         UNITED STATES MAGISTRATE JUDGE



### Proof of Service

I hereby certify that a copy of this Report and Recommendation was served upon Counsel fo Record on this date.

Dated: 06/14/05                          s/ Lisa C. Bartlett
                                         Courtroom Deputy